UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **Crystal Williams**, *Plaintiff*, v. **Professional Recovery Management, Inc. d/b/a Fox Collection Center,** *Defendant.* | Case No.: _____ Division: _____ Ad Damnum: **$2,000 + Atty Fees & Costs** **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Crystal Williams** ("**Ms. Williams**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Professional Recovery Management, Inc.,** doing business as **Fox Collection Center** ("**Fox**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Ms. Williams, an individual consumer, against Fox for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.*, ("**FDCPA**") and the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

**JURISDICTION AND VENUE**

1. Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

2. Fox is subject to the provisions of the FDCPA, the FCRA, and to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

3. Venue is proper in Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and/or caused by Fox therein.

## PARTIES

4. **Ms. Williams** is a natural person residing in Brevard County, Florida, and is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

5. **Ms. Williams** was previously known as **Crystal Pierce.**

6. **Fox** is a Tennessee Limited Liability Company with a primary business address of 456 Moss Trl, Goodlettsville, TN 37072.

7. Fox is registered with the State of Florida as a Corporation under the name "Professional Recovery Management, Inc."

8. Fox's Florida Registered Agent is **CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324.**

9. Fox is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), in that it uses an instrumentality of interstate commerce, including postal mail, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempt to collects, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. Fox is licensed as a *Consumer Collection Agency* ("**CCA**") by the Florida Office of Financial Regulation and holds license number CCA9903825. **SEE PLAINTIFF'S EXHIBIT A.** As a CCA, Fox knows, or should know, the requirements of the FDCPA.

**FACTUAL ALLEGATIONS**

11. In May 2014, Ms. Williams allegedly had a past-due balance owed to The Cardiac Clinic ("**Cardiac Clinic**") for medical services (the "**alleged Debt**" or "**Debt**").

12. The Debt arose from services which were for family, personal, or household purposes, specifically for medical services, and meets the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5).

13. In or around May 2014, Cardiac Clinic transferred or otherwise assigned the Debt to Fox for collection.

14. Cardiac Clinic alleged that the amount of the Debt was $584, rounded to the nearest whole dollar.

15. Ms. Williams disputes owing the Debt because she fully paid, out-of-pocket, for the medical treatment in advance.

16. In January 2019, Fox reported the Debt to Experian and Equifax, two nationwide *Consumer Credit Reporting Agencies* ("**CRAs**").

17. In April 2019, Ms. Williams disputed Fox's reporting to Equifax.

18. Equifax then sent Fox an *Automated Consumer Dispute Verification* ("**ACDV**") request, and asked Fox to make a reasonable investigation into the dispute pursuant to 15 U.S.C. § 1681s-2(b).

19. Upon receipt of the ACDV request, Fox unequivocally knew that Ms. Williams disputed the Debt.

20. The ACDV was sent via e-OSCAR, an online system used by CRAs to communicate with furnishers of data, such as debt collectors.

21. When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

> [b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

22. Fox returned the ACDV to Equifax, verifying it had completed its investigation and that all of its information was accurate.

23. Fox instructed Equifax to report a Metro 2 "compliance condition code" ("**CCC**") "XH" meaning "account **previously** in dispute – investigation complete, reported by data furnisher" (emphasis added).

24. In cooperation with the major CRAs, the Consumer Data Industry Association ("**CDIA**") publishes the Metro 2 reporting standards to assist furnishers with their compliance requirements under the FCRA.

25. CDIA's reporting products are used in more than nine billion transactions each year. *See http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*.

26. The "Metro 2 Format Task Force" is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA.

27. The Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards.

28. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

29. Equifax and Experian require its furnishers of data, like Fox, to report data according to Metro 2 standards.

30. Fox did not adhere to Metro 2 standards when it reported the Debt was "previously disputed" since the "XH" CCC is applicable only to situations where information was disputed and the consumer *later indicates to the data furnisher his/her dispute has been resolved.*

31. Failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willful violation of the FCRA. *See Gillespie v. Equifax Info. Servs., LLC.*, No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008

32. For a debt to be legitimately reported as "previously in dispute," the two parties to the dispute must reach accord and agreement as to if the debt is owed.

33. At no point did Ms. Williams indicate, or even imply, to Fox that she agreed she owed the debt and no longer disputed it.

34. Thus, Fox had no reason to believe that the Debt was no longer disputed by Ms. Williams.

35. Indeed, Fox had every reason to believe the opposite, that Ms. Williams actively disputed the debt.

36. The "plain language of the 'XH' code implies any dispute the consumer previously had about the account is settled, or a solution has been found." *Wood v. Credit One Bank*, No. 3:15-cv-594 (E.D. Va. Sept. 21, 2017).

37. Fox could have reported a Metro II compliance condition code of "XB," meaning "consumer disputes this information," but did not.

38. When responding to an ACDV and indicating information and been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016)

39. No evidence could have been gathered by Fox to support the conclusion the Debt was "previously disputed" and "now resolved" since Fox possessed only evidence suggesting the debt was *currently* disputed.

40. The failure to update reporting to indicate a debt is disputed can in and of itself violate the FCRA; see *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

41. As such, Fox's investigation was inherently unreasonable since any reasonable investigation could not have determined an actively disputed debt as "previously" disputed.

### Failure to report disputed debt as disputed

42. On August 12, 2019, Fox made a *new* report to Experian which contained a new balance date, a new date reported, and other updated information, and also contained the CCC of "XH" meaning "account **previously** in dispute – investigation complete, reported by data furnisher" (emphasis added). **SEE PLAINTIFF'S EXHIBIT B.**

43. Fox was still obliged to disclose the fact that the Debt was disputed in all communications about the debt, including its August 2019 report to Experian. *See Semper v. JBC Legal Group*, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005).

44. Fox had no evidence to believe Ms. Williams withdrew her dispute of the debt.

45. Fox had no right to unilaterally nullify Ms. Williams right to have the debt labeled as disputed. The FDCPA requires a debt collector to communicate a debt is disputed, and 1692e(8) "does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt. *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ….'")

46. Fox should have continued to report the Debt with the notation, "account information disputed by consumer."

47. The distinction between reporting a debt as "previously in dispute" and currently in dispute is significant since many commercially-used credit scoring algorithms disregard a collection account reported *currently* in dispute, but not those *previously in dispute*, from their score computations.

48. Fox's failure to disclose that the Debt was currently disputed materially damaged Ms. Williams's credit scores.

49. "The failure to inform a credit reporting agency that the debtor disputed his or her debt will *always* have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018

50. Fox also reported to Equifax in August 2019 that the account was "previously disputed." **SEE PLAINTIFF'S EXHIBIT C.**

51. Reporting a debt to a CRA is an attempt to collect the Debt.

52. Fox's reports to the CRAs are "communications" as defined by 15 U.S.C. § 1692a(2).

53. Ms. Williams has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees or has assigned her right to fees and costs to the firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

54. Ms. Williams adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

55. Fox violated **15 U.S.C. § 1692e and 1692e(10)** in that Fox made *false representations* in an attempt to collect a debt by failing to report a disputed debt as disputed, and, to the contrary, implied it was no longer disputed and only "previously" disputed.

56. Fox violated **15 U.S.C. § 1692e(2)(a)** in that Fox made *false representations about the character and legal status* of a debt by failing to report a disputed debt as disputed, and, to the contrary, implied it was no longer disputed and only "previously" disputed.

57. Fox's conduct violated **15 U.S.C. § 1692e(8)** in that Fox *communicated credit information known to be false* by reporting a disputed debt was only *previously* disputed.

58. Fox's conduct violated **15 U.S.C. § 1692e(8)** in that Fox *communicated credit information known to be disputed without disclosure* of dispute in its reports to Equifax and Experian in August 2019.

59. Fox's actions were willful and intentional as it could not have negligently made reports and responded to disputes to the CRAs.

60. Fox's actions render Fox liable for the above-stated violations of the FDCPA.

**WHEREFORE**, Ms. Williams respectfully requests this Honorable Court enter judgment against Fox for:

a. Statutory damages of $**1,000** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA

61. Ms. Williams adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

62. Fox violated **15 U.S.C. § 1681s-2(b)** when it failed to make a reasonable investigation after notice of dispute from a CRA, Experian, since any reasonable investigation would have concluded that Fox's reporting was no longer complete or accurate unless modified to include the fact the debt was disputed by the consumer, Ms. Williams.

63. Fox's conduct was willful and intentional, or, alternately, was engaged in with a reckless disregard for consumer rights, as shown by his failure to conform to established Metro 2 standards which Fox had pledged to follow.

64. Fox is liable under the FCRA to Ms. Williams in a statutory amount up to $1,000 *per incident*.

**WHEREFORE,** Ms. Williams respectfully requests this honorable Court to enter judgment in her favor, and against Fox, for:

a. The greater of Ms. Williams' actual damages or statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Ms. Williams hereby demands a jury trial on all issues so triable.

Respectfully submitted on **January 10, 2020,** by:

>/s/ *Thomas M. Bonan*
>Thomas M. Bonan, Esq.
>FBN: 118103
>Seraph Legal, P.A.
>2002 E. 5th Avenue • Suite 104
>Tampa, FL 33605
>(813) 321-2347
>Tbonan@SeraphLegal.com
>Attorney for Plaintiff

## **EXHIBIT LIST**

A. License Number — Professional Recovery Management, Inc.
B. Equifax Consumer Disclosure, August 29, 2019  Excerpt — re: "account previously in dispute".
C. Experian Consumer Disclosure, August 25, 2019  Excerpt — re: account "previously" disputed.